IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAROL BARTON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:20-cv-00118 |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, | ) ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE NEWBERN |
| Defendant. | ) ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 33). Plaintiff filed a response (Doc. No. 39) and Defendant filed a reply (Doc. No. 42). For the reasons discussed below, the Defendant's motion will be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Carol Barton ("Ms. Barton") was employed with the Metro School System for over twelve years as an Information System Specialist in the Employment Resource Center ("ERC"). (Doc. No. 40 ¶ 1). All ERC employees had these same duties divided amongst them and if an employee was out sick or on vacation, a substitute was called in to perform some of the duties or the duties of that employee were reallocated. (Doc. No. 43 ¶ 1). If an employee took off, the ERC staff would cover the job responsibilities. (*Id.* ¶ 10).

At all times, Metro was aware that Ms. Barton was a practicing Jehovah's Witness. (Doc. No. 43 ¶ 18). As part of her religion, Ms. Barton participated each summer in a convention that usually lasted three days. (*Id.* ¶¶ 19-20). The Jehovah's Witnesses have a Special Convention, which only occurs every five years, where a practicing Jehovah's Witness applies to be selected

as a delegate. (*Id*. ¶ 21). A practicing Jehovah's Witness is only selected if they are an outstanding member and have certain credentials. (*Id*. ¶ 23). Selection as a delegate to one of these special conventions is significant. (*Id*.). The Special Convention included going to the court, encouraging people in the area, door-to door ministry, meetings with other delegates, Bible discourse, interchange of encouragement and spiritual growth, visits to holy sites, and discussions and visits with local congregations, all of which are integral to Ms. Barton's faith. (*Id*. ¶ 22). Consistent with her commitment to and the expectations of her faith, Ms. Barton applied and was selected to be a delegate to a Special Convention in 2018 in Sri Lanka. (*Id*. ¶ 25).

In January 2018, Ms. Barton notified Metro of her selection as a delegate for her congregation to the Special Convention. (*Id*. ¶ 26). In April 2018, Ms. Barton became aware of the dates of the Special Convention, June 25 through July 10, and requested twelve days off to attend. (*Id*. ¶ 27; Doc. No. 40 ¶ 2). Metro denied Ms. Barton's request, stating that the requested dates were within a vacation freeze for ERC staff. (Doc. No. 43 ¶ 27). Metro refused to reconsider Ms. Barton's request. (*Id*. ¶ 29). None of Ms. Barton's supervisors raised the possibility of shortening her trip or any alternative options. (*Id*. ¶ 30). Ms. Barton was met with the ultimatum that she could keep her job and not attend her religious conference, or transfer to another department. (*Id*. ¶ 31).

On June 11, 2018, Ms. Barton submitted a letter of transfer. (*Id*. ¶ 35). Metro did not fill Ms. Barton's position until she had returned from her convention. (*Id*. ¶ 39). Despite Ms. Barton's absence, employees recalled that the Summer of 2018 did not require that they worked more hours than other summers, and instead the work hours were similar to past years. (*Id*. ¶ 12). Ms. Barton filed this action against Metro on February 7, 2020, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"). (Doc. No. 1).

2

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

3

Case 3:20-cv-00118   Document 49   Filed 03/31/22   Page 3 of 8 PageID #: 484

### III. ANALYSIS

**A. Failure to Accommodate**

"Title VII provides for religious accommodation claims in its definition of religion, which includes 'all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business.'" *Reed v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 569 F.3d 576, 579 (6th Cir. 2009) (quoting 42 U.S.C. § 2000e(j)). "This definition imposes upon employers a 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship[.]'" *Id*. (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)).

To establish a *prima facie* case based on failure to accommodate, Plaintiff must show that: (1) she holds a sincere religious belief that conflicts with an employment requirement; (2) she has informed the employer about the conflicts; and (3) she was discharged for failing to comply with the conflicting employment requirement. *See Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015) (citing *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)). If the employee establishes a *prima facie* case, the burden shifts to the employer to show that it could not reasonably accommodate the employee's religious beliefs without undue hardship. *See id*. Metro argues that Ms. Barton cannot establish the first and third elements of her *prima facie* case.

1. <u>Sincerely Held Religious Belief</u>

As noted above, the first element requires Ms. Barton to show that she holds a sincerely religious belief that conflicts with an employment requirement. Through its pending motion for summary judgment, Metro does not dispute that Ms. Barton holds a sincere religious belief or that

4

her sincerely held belief conflicted with an employment requirement. Instead, Metro contends that the Special Convention was primarily social in nature, and, therefore, Ms. Barton's desire to attend the Special Convention was not a protected religious practice or observance under Title VII. (*See* Doc. No. 36 at 2-3 (citing *Duran v. Select Med. Corp.*, 2010 WL 11493117, *6 (W.D. Tenn. Mar. 19, 2010) (family meal and gift exchange after Christmas Mass not protected religious practice or observance under Title VII); *Wessling v. Kroger Co.*, 554 F. Supp. 548, 552 (E.D. Mich. 1982) (setting up for a church play, receiving children, and decorating not protected religious observance under Title VII)). In support, Metro produces evidence that the Special Convention included large events at a stadium, evening gatherings, and entertainment at a hotel. (Doc. No. 36 at 3 (citing Ms. Barton's letter of transfer, Doc. No. 33-3; Doc. Nos. 35-2, 35-3, 35-4, 35-5)). In her response, Ms. Barton produces evidence that her attendance at the Special Convention was a requirement of the tenants of her religion. (*See* Doc. No. 41-1 ¶¶ 9-16). Given the competing evidence, the Court finds that there are genuine issues of material fact regarding the first element of Ms. Barton's failure to accommodate claim.

2. Discharged or Disciplined

A plaintiff may satisfy the discharge or discipline element by showing that she was discharged or disciplined, or, in the alternative, that she was constructively discharged. *See Mohamed v. 1st Class Staffing, LLC*, 286 F. Supp. 3d 884, 903 (S.D. Ohio 2017) (citing *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir. 2003)). Metro contends that Ms. Barton cannot satisfy this element because she quit her job. (Doc. No. 36 at 4-5 (citing Ms. Barton's letter of transfer, Doc. No. 33-3)). In her response, Ms. Barton points to evidence that Metro gave her an ultimatum of either attending the Special Convention or transferring to another department. (Doc. No. 39 at 17 (citing Doc. No. 41-1 ¶¶ 21-22, 29-32)). Ms. Barton argues that her transfer and loss

5

of her position at the ERC satisfies the discharge/discipline element because Metro gave her no choice between failing to fulfill the obligations of her honestly held belief or transferring from her career into a different department. In its reply, Metro generally asserts that the facts of the present case do not rise to the level of constructive discharge. (Doc. No. 42 at 2-3). Viewing the evidence and drawing all reasonable inferences in the light most favorable to Ms. Barton, the Court finds that there is a genuine dispute of material fact as to whether Ms. Barton voluntarily left her job or whether Metro discharged her.

    3. <u>Undue Burden</u>

Metro asserts that it could not reasonably accommodate Ms. Barton's request for 12 days off without undue hardship. In support, Metro produces evidence that Ms. Barton requested time off during a busy time of year and that other Metro employees had to take on Ms. Barton's work after her transfer. On a failure to accommodate claim of religious discrimination under Title VII, an undue hardship is something greater than hardship, and an employer does not sustain its burden of proof merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine. *See Mohamed v. 1st Class Staffing, LLC*, 286 F. Supp. 3d 884, 910 (S.D. Ohio 2017). Ms. Barton points to evidence that other employees took similar or more time off than her and that ERC employees recalled working during the Summer of 2018 similar hours to past years. (*See* Doc. No. 39 at 17-19). Viewing the evidence and drawing all reasonable inferences in the light most favorable to Ms. Barton, the Court concludes that a reasonable jury could find that Ms. Barton's request for a two-week vacation did not impose an undue burden on Metro.

## B. Retaliation

Metro argues that Ms. Barton's retaliation claim should be dismissed for failure to exhaust administrative remedies because she did not check the "retaliation box" or mention retaliation in the narrative portion in her EEOC charge. (Doc. No. 36 at 8 (citing EEOC charge, Doc. No. 34-3)). Here, Ms. Barton's retaliation claim is reasonably related to the factual allegations in the EEOC charge. Ms. Barton's EEOC charge states:

> I began employment with Metro Nashville Public Schools during 2003. I currently hold the position of Substitute Teacher. The organization employs more than 15.
>
> Because of my religious belief, I have attended religious conferences during the summer for several years. During January of 2018, I informed multiple supervisors and Human Resources that I needed to attend a 12-day conference during the summer of 2018. My request was repeatedly denied. Because I could not attend the conference as a full-time employee and did not wish to be discharged, I transferred to a part-time position. Currently, I continue to hold the part-time position.
>
> I believe that I have been discriminated against because of my religion in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Doc. No. 34-3). The allegations in Ms. Barton's EEOC charge would have prompted the EEOC to investigate Ms. Barton's transfer. Therefore, the failure to accommodate and retaliation claims are "reasonably related" for administrative exhaustion purposes. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) ("when facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim"). Accordingly, Ms. Barton's retaliation claim will not be dismissed for failure to exhaust administrative remedies.

Metro also argues that Ms. Barton cannot establish a *prima facie* case of retaliation. To do so, Ms. Barton must show that: (1) she engaged in activity protected by Title VII; (2) the exercise

of her protected rights was known to Metro; (3) Metro thereafter took an action that was materially adverse to her; and, (4) her protected activity was the but-for cause of the adverse employment action. *Kenney v. Aspen Tech, Inc.*, 965 F.3d 443, 448 (6th Cir. 2020). Ms. Barton claims that she was discharged in retaliation for asserting her right to a religious accommodation at work. Metro argues that Ms. Barton voluntarily quit and did not suffer an adverse action. For the same reasons stated above with respect to the discharge element of Ms. Barton's prima *facie case* for failure to accommodate, the Court finds that there is a genuine dispute of material fact regarding whether Ms. Barton voluntarily left her job or whether Metro discharged her, and, if the latter, whether the discharge was causally connected to Ms. Barton's request for 12 days off to attend the Special Convention. There is also competing evidence from the parties as to whether Metro's actions were pretext for religious discrimination.

For all of the foregoing reasons, Metro's motion for summary judgment will be denied.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE